TEXAS SLING COMPANY et al., Appellants,

v.

Samuel EMANUEL et al., Appellees.

No. 7808.

Court of Civil Appeals of Texas.

Texarkana.

Aug. 15, 1967.

Rehearing Denied Sept. 12, 1967.

Howell E. Stone, Talbert, Giessel, Barnett & Stone, Jerry V. Walker, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellants.

Walter Workman, Baker, Botts, Shepherd & Coates, Stanley Swenson, Houston, for appellees.

CHADICK, Chief Justice.

In the summer of 1961, H. A. Lott, Inc., as general contractor, undertook construction of a school building in Houston, Texas. A large crane was needed in erecting the building. H. A. Lott, individually, owned a Koehring 605 crane and leased it to H. A. Lott, Inc. for use on the project. As erection of the structure progressed it became necessary to extend the crane's reach, that is, lengthen the boom of the crane. H. A. Lott, as owner of the crane, contracted with American Powerstage Company to furnish a twenty foot boom extension, together with twenty foot extensions of the crane's two pendant lines. American Powerstage Company contracted with Texas Sling Company, an organization specializing in splicing wire rope, to splice the twenty foot extensions into the existing pendant lines. The wire rope for the extension was supplied by American Powerstage Company, and the latter company installed the spliced boom pendant cables on the crane during the month of July, 1961, as the boom extension was added.

The Koehring 605 crane with the newly installed extensions was being used by H. A. Lott, Inc., to lift and pour concrete on the school job on August 31, 1961, when the crane fell. Several persons were injured and considerable property damage occurred. Samuel Emanuel, an employee of H. A. Lott, Inc., filed a personal injury action against Texas Sling Company, American Powerstage Company and H. A. Lott, individually. Travelers Insurance Company, workmen's compensation carrier for H. A. Lott, Inc., intervened. H. A. Lott, Inc. entered suit against American Powerstage Company and Texas Sling Company for damages to property. These actions were consolidated and tried before a jury in a district court of Harris County. A judgment awarding recovery of $75,182.00 was rendered for plaintiff, Samuel Emanuel, against Texas Sling Company, but out of this sum the intervenor, Travelers Insurance Company, was awarded $5,837.00; the judgment also awarded plaintiff H. A. Lott, Inc. a joint and several recovery of $7,000.00 for property damage from Texas Sling Company and American Powerstage Company; additionally, the judgment discharged the liability of H. A. Lott, individually, with a take nothing award.

## APPEAL OF TEXAS SLING COMPANY

The brief of this appellant has limited its appeal to the judgment recovered by Samuel Emanuel and Travelers Insurance Company. Relevant to this particular appeal, the record shows that about six weeks after the extension had been installed, on August 31, 1961, Samuel Emanuel, an employee of H. A. Lott, Inc., was performing his job of spreading concrete as it was emptied from a bucket hoisted to the second floor level by the crane. The bucket in use weighed approximately a thousand pounds and contained approximately four thousand pounds of concrete. When the loaded bucket was about six feet above the work deck a cable splice made by Texas Sling Company failed and the boom with its load crashed onto and through the decking. Samuel Emanuel was injured.

The first point of error briefed is as follows:

"I. The Court erred in entering judgment against Texas Sling Company insofar as said judgment was based upon answers to Special Issues Numbers 14 and 15 because:

(a) There was no evidence of any defect that could have existed in the splice made by Texas Sling Company which would cause it to slip other than an inadequate number of tucks and this issue was found by the jury against plaintiff.

(b) There was no evidence of any defect that in fact existed in the splice made by Texas Sling Company other than that concerning an inadequate number of tucks and this issue was found by the jury against plaintiff.

(c) There was no evidence that there was a defect in the splice made by Texas Sling Company which an inspection would have disclosed.

(d) There was no evidence that the failure of Texas Sling Company to inspect the splice after it was made was the proximate cause of the accident causing Plaintiff's injuries.

"The jury found in response to Special Issue No. 23 that Texas Sling Company 'orally agreed' with American Power Stage to furnish splices necessary to make suitable boom pendants; in response to Special Issue No. 24 that one of such splices was not suitable; in response to Special Issue No. 25 that such splice caused the boom pendant to be imminently dangerous, and in response to Special Issue No. 26, that the 'act of Texas Sling Company in furnishing such splice' was the proximate cause of the accident."

Special Issues No. 14 and 15 referred to in the point, together with the jury's verdict on them, are as follows:

"SPECIAL ISSUE NO. 14. Do you find from a preponderance of the evidence that before the boom pendants were furnished for use on the Koehring 605 Crane, the Texas Sling Company, acting by and through its agents and employees, failed to make such inspection of the splices of such pendants as would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances?

"Answer: 'We do'.

If you have answered Special Issue No. 14 'We do', and only in that event, then answer:

"SPECIAL ISSUE NO. 15. Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the accident of August 31, 1961?

Answer: 'We do.' "

The jury's verdict upon still another issue has a bearing that must be noticed in the consideration of this point; such issue and jury's answer follows:

"SPECIAL ISSUE NO. 12. Do you find from a preponderance of the evi-

dence that Texas Sling Company, in making such splice, if you have so found, failed to use the number of tucks therein as would have been used therein by a splicer of ordinary prudence in the exercise of ordinary care under the same or similar circumstances?

Answer: 'We do not.' "

No inspection of the splice was made by Texas Sling Company, so the initial questions the point of error presents for decision are whether or not there is any evidence that a defect in the splice could have existed, or that a defect did in fact exist, or that there was a defect in the splice that an inspection would have disclosed. The evidence having a tendency to support the jury's finding on these questions, in its most favorable aspect, is that the splice had shorter ends than other splices on the existing boom assembly, had fewer tucks than some splicers would place in a similar pendant line, the ends of strands in the splice were not brazed, the segment of extension cable spliced was of smaller diameter than that ordinarily used on a number 605 Koehring crane, and that a properly fabricated splice would break elsewhere before it would pull loose under tension.*

■ The evidence, although scanty and circumstantial in nature, has probative weight and supports a probability that the splice could and did have visible defects and failed because of one or a combination of them. The jury refused by its answer to Special Issue No. 12 to find that Texas Sling Company failed to use the number of tucks a splicer of ordinary prudence

would have used in the exercise of ordinary care, but jury answer to this issue was not conclusive of the questions here considered. Such answer did not rule out a conclusion by the jury that the number of tucks actually in the splice, (though not constituting negligence standing alone), when considered with the proof of inadequacy in other respects could have and did combine with one or more of the inadequacies proven to create a visible defect that could and did cause the splice to slip; or that the inadequacies in the splice, other than the number of tucks, made it visibly defective and caused the failure and damage.

■ The questions here decided are not free of doubt. Counsel for Texas Sling Company in oral argument and in an admirable brief marshals the facts, circumstances and authorities in an array that is very persuasive. However, the point of error does not require this court to decide the sufficiency or great weight and preponderance of the evidence and the conclusions expressed seem to be in harmony with the authorities. The Supreme Court of Iowa in Lunde v. Cudahy Packing Company, 139 Iowa 701, 117 N.W. 1068 says:

"A cause being shown which might produce an accident, and it further appearing that an accident of that particular character did occur, it is a warrantable inference, in the absence of showing of other cause, that the one known was the operative agency in bringing about such result."

This language was quoted with approval in Bock v. Fellman Dry Goods Co., 212

* The wire cable was composed of several strands. The end of the cable was turned back, and the ends of strands tucked among and around the strands of the cable's body near the end of the cable, thereby forming a loop. A tuck in a splice results when an end strand is worked in and out of the strands of the body of the cable in a spiral pattern. The end of a cable strand that protruded from the body of the cable when the splice is completed is referred to in the trade as a "bitter" end, or so the testimony of one expert witness would indicate. Standard splicing procedure requires that the length of the protruding ends be equal to the diameter of the cable. For example, on a one inch diameter cable the strand's ends would protrude one inch from the body of the cable. An experienced splicer testified that it was customary to braze the protruding ends, explaining that brazing welded the ends into the cable.

S.W. 635 (Tex.Com.App. op. adpt. 1919); see also Sam White Oldsmobile Co. v. Jones Apothecary Co., 337 S.W.2d 834 (Tex.Civ.App. Houston 1960, writ ref., n. r. e.); Davis Transport, Inc. v. Bolstad, 295 S.W.2d 941 (Tex.Civ.App., Galveston, 1956, writ ref'd); Texas Employers Ins. Ass'n v. Texas Compress Co., 284 S.W.2d 922 (Tex.Civ.App., Galveston, 1955, wr. ref'd, n. r. e.) Appellant Texas Sling Company's first point of error is overruled.

## APPEAL OF AMERICAN POWER-STAGE COMPANY

The parties stipulated that H. A. Lott's was damaged $7,000.00 by the crane's collapse. A joint and several judgment for that sum was entered for H. A. Lott, Inc., against Texas Sling Company an American Powerstage Company, but only American Powerstage Company prosecutes an appeal. No challenge is made that the facts found are unsupported by evidence. The appeal is concerned only with the effect of the jury's response to Special Issues No. 20, No. 21 and No. 22; the issues and answers were as follows:

"SPECIAL ISSUE NO. 20. Do you find from a preponderance of the evidence that pursuant to such oral argument, John Goss, acting for and on behalf of American Powerstage Company, did furnish such twenty-foot boom section and twenty-foot boom pendant cable lines for use on the Koerhing 605 Crane?

Answer 'We do'.

"If you have answered Special Issue No. 20 'We do', and only in that event, then answer:

"SPECIAL ISSUE NO. 21. Do you find from a preponderance of the evidence that one of the twenty-foot boom pendant cables was not suitable for its intended use on the Koehring 605 Crane?

Answer 'We do'.

"If you have answered Special Issue No. 20 'We do', and only in that event, then answer:

"SPECIAL ISSUE NO. 22. Do you find from a preponderance of the evidence that such act of John Goss, acting for and on behalf of American Powerstage Company, was a proximate cause of the accident of August 31, 1961?

Answer 'We do'."

■ Because answering Special Issue No. 22 is conditioned upon a "We do" answer to Special Issue No. 20, American Powerstage construes the result of the two answers to be a finding by the jury that the act of furnishing the twenty-foot boom section and the twenty-foot pendant lines was a proximate cause of the accident in question. So construed, it is argued, there is an absence and failure by the jury to find that the unsuitability of one of the twenty-foot pendant cable lines was a proximate cause of the accident. Appellant American Powerstage concedes that it can find no case in point to support its construction but undertakes to demonstrate that such construction of the charge is correct. The appellee H. A. Lott, Inc.'s brief appears to agree that there is no case in point, as it cites no decision of an appellate court in support of its view that the jury found the unsuitable pendant line was the proximate cause of H. A. Lott Inc.'s loss. A reasonable construction, in harmony with the judgment entered by the trial judge, would be (1) that the answer to Special Issue No. 20 established that American Powerstage did in fact furnish the twenty-foot boom section and both twenty-foot pendant lines, and (2) that the answer to Special Issue No. 21 established that one of the twenty-foot cables so furnished was not suitable for its intended use, and (3) that Special Issue No. 22 established that furnishing the boom section and pendant lines, one of which was not suitable for its intended use, was a proximate cause of the accident in question. Such construction embraces

the full range of the facts established, and constitutes a verdict that furnishing a pendant line unsuitable for its intended use was a proximate cause of the accident. Appellant American Powerstage's points of error presenting this problem are overruled.

All other points of error briefed by the appellants have been carefully considered and disposition of them does not require reversal of the judgment. Accordingly, the judgment is affirmed.